STATE OF NEBRASKA, APPELLEE, v. RONALD KNAFF, APPELLANT.

285 N. W. 2d 115

Filed November 6, 1979. No. 42568.

Dennis R. Keefe, Lancaster County Public Defender, and Rodney J. Rehm, for appellant.

Paul L. Douglas, Attorney General, and Judy K. Hoffman, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

HASTINGS, J.

Defendant has appealed a conviction and sentence of 3 to 5 years for robbery under the provisions of section 28-414, R. R. S. 1943. He assigns as error the trial court's refusal to instruct on the lesser-included offense of larceny from the person, its failure to

order a new trial when it was discovered that the State had not complied with a pretrial disclosure order, and that although the crime was committed on August 19, 1978, defendant was sentenced on January 24, 1979, under the statute in force at the time of the crime rather than the Nebraska Criminal Code, section 28-101 et seq., R. S. Supp., 1978, which became effective January 1, 1979. However, counsel for the defendant abandoned this last assignment of error at the time of oral argument, the issue having been resolved against defendant's position by this court in State v. Weinacht, 203 Neb. 124, 277 N. W. 2d 567 (1979), and State v. Munn, 203 Neb. 810, 280 N. W. 2d 649 (1979).

During the early morning hours of August 19, 1978, Stephen Fiero was sleeping in his bedroom while still fully clothed. He felt someone touching him, but thought it was a friend telling him he was there. He then felt someone trying to get into his back pocket. He raised up and saw two black males, one standing in the doorway and the other at the foot of his bed. The one near the bed had what looked like a large dowel stick or metal rod about 3 feet in length in his hand, and the other appeared to be grasping a revolver or pistol in both of his hands, pointing at the victim. Immediately realizing they were attempting to take his billfold, and believing if he resisted he would be shot or clubbed, he lay back down and pretended to be asleep. He felt his billfold being taken from his pocket by one of the men and, upon hearing them leave, got up and called the police. Mr. Fiero was unable to recognize either of the men, and the identity of the defendant and his presence at the scene were established by fingerprints and other evidence. The defense offered no evidence and no one else testified concerning the facts of the actual taking.

It is on the basis of the foregoing evidence that defendant insists he was entitled to an instruction on

the lesser-included crime of larceny from the person. The elements of robbery are the *forcible* taking of property from the person of another *by violence or putting in fear,* section 28-414, R. R. S. 1943, whereas larceny from the person requires the taking of property from another *without putting such person in fear by threats or the use of force and violence,* section 28-505, R. R. S. 1943. There is no question, of course, but that larceny from the person is a lesser-included offense of robbery, as the former crime "is one which is fully embraced in the higher offense." State v. Tamburano, 201 Neb. 703, 271 N. W. 2d 472 (1978).

The only evidence presented to the jury was that the victim was awake, saw a club and what he believed to be a gun, and permitted his property to be taken because he was afraid of injury to his person. It is only in those cases where, under a different but reasonable view, the evidence is sufficient to establish guilt of the lesser offense and also leave a reasonable doubt as to some particular element included in the greater, but not the lesser, offense that the lesser-included offense instruction must be given. Where the evidence is uncontroverted on an essential element of the crime, mere speculation that the jury may disbelieve it does not entitle the defendant to such an instruction. State v. Tamburano, *supra.* The undisputed facts established in this case did not require the submission of a lesser-included offense instruction.

Defendant's motion for disclosure, which was sustained by the court, contained the following at paragraph 5: "Conflicts in information regarding this case as shown by the various witnesses, scientific tests, tangible objects and other relevant circumstances." The disclosure which the defense claims the State failed to make, resulting in prejudice to defendant, was a police report, particularly with regard to a recitation of the alleged facts of the

crime by the victim to Roger Schmidt, the investigating police officer. Defendant's counsel concedes that the police report was given to him immediately following the testimony of Mr. Fiero and at the commencement of the testimony of Officer Schmidt, the next witness. Defense counsel also agrees that if he had desired, he could have recalled Mr. Fiero if there was any information in the police report with which the witness could have been impeached. As stated by counsel during the argument on the motion for a new trial: "I didn't feel I made a judgment that I didn't need to bring — I just couldn't bring the victim back on the witness stand and have his testimony repeated which would be the only way I felt that I could impeach him." It is somewhat difficult to see prejudice to the defendant's position in this regard because whether he attempted to impeach the witness during his original cross-examination or during a recall, the questions and answers would undoubtedly have been the same.

Be that as it may, an examination of the testimony of the witness and the police report reveals no significant discrepancies which would have afforded the basis for a meaningful impeachment. The police report disclosed that the witness told Officer Schmidt that the man holding the stick or club had raised it above his head in a threatening manner, whereas at the trial he said the man held it at his side and never waved it in a threatening manner. Clearly, the trial testimony was more favorable to the defendant.

Also, Mr. Fiero told the police officer that the other man had his arms extended, hands together and fingers locked pointing directly at him, and he thought for sure the party had a handgun. He stated he did not in fact see a handgun, but automatically assumed the man had one. During his trial testimony, he said: "The one standing in the doorway was standing up, and he was in this position in my door

(indicating). * * * Like this pointing at my head (indicating). * * * Well, when I seen this (indicating) I just said to myself it was a gun. It — his — his fingers couldn't be as long as what it looked like, so — * * * I thought it was a gun." This hardly justifies defendant's allegation that at the time of the report to the police officer the witness was more confused about the existence of a gun than at the trial.

Finally, defendant claims that the police report indicates the witness said the party standing by the door called the party near the bed "Frank," and that Mr. Fiero testified at the trial that sizewise the defendant came closest to the person near the bed, so why was he called "Frank," which in no way sounds like the defendant's first name of Ronald. He said in his brief that this raises a serious question as to the conclusiveness of the State's identification of the defendant. In the first place, defendant has never raised insufficiency of the evidence as error. Secondly, the witness at no time claimed to be able to identify the defendant. As earlier stated, this was accomplished by other evidence as to which defendant raised no complaint. Finally, the police report reveals facts entirely opposite from those claimed by defendant. The report reflects that "He [the witness] said the party did eventually get the wallet out of his pants and at this time he heard the black/male standing to his east say, 'let's go' and then the party mumbled something, he said it sounded like a name, however, he said he had no idea what the mumbling sounded like. He did say, he thought it might have been the word 'frank' and possibly might have started with an 'F' however he also indicated that after calling Headquarters somebody had said the name 'Frank' over the phone, he said that this might have been the case." If anything, it was the one who "came closest sizewise" to the defendant who called his companion in the doorway Frank. There

was no inconsistency here.

Even if the report had never been furnished to the defendant, which it was, it contained no "conflicts in information regarding this case as shown by the various witnesses," and did not violate the trial court's order to disclose. Defendant's motion for a new trial was correctly overruled.

Defendant's assignments of error are not sustained by the record and the judgment of the trial court is affirmed.

AFFIRMED.